# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LIMING WU,

        Plaintiff,

v.

                                      No. CIV 14-0150 RB/KRS
                                      consolidated with
                                      17cv0113 RB/KRS
                                      18cv0813 RB/KRS

David Bernhardt,[1] Secretary of the United States
Department of the Interior, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim and for Summary Judgment and Memorandum in Support, filed on November 13, 2018 (Doc. 83[3]), and Defendants' Motion to Dismiss Plaintiff's Complaint for Damages under the Federal Tort Claims Act, filed on December 18, 2018 (Doc. 94). Having considered the parties' arguments and the relevant law, the Court will **grant in part** Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim and for Summary Judgment and Memorandum in Support (Doc. 83), **grant** Defendants' Motion to Dismiss Plaintiff's Complaint for Damages under the Federal Tort Claims Act, **dismiss** 18cv0813 as duplicative, and allow Plaintiff time to file a Fifth Amended Complaint.

---

[1] David Bernhardt was confirmed as Secretary of the Interior on April 11, 2019. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted as a party.

[2] The Court originally filed this Opinion in 14cv0150. (*See* 14cv0150, Doc. 112.) As 17cv0113 remains Plaintiff's only lawsuit, the Court will also file the Opinion in this docket for ease of reference. In the future, the caption of the case shall reflect only the case number and parties relevant to 17cv0113.

[3] Unless otherwise noted, all references to the CM/ECF docket refer to documents filed in 14cv0150.

## I.      Legal Standard

Plaintiff's "pro se . . . pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers . . . ." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (internal citations omitted)). The Court may not, however, "serv[e] as the litigant[s'] attorney in constructing arguments and searching the record." *Id.* (citing *Hall*, 935 F.2d at 1110).

## II.      Background

Before laying out the relevant facts and procedural background of the case, it is necessary for the Court to resolve the parties' disputed facts to the extent they will inform the Court's ruling on summary judgment.

### A.      Relevant Local Rules

Pursuant to Local Rule 56.1, the party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists." D.N.M. LR-Civ. 56.1(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* Defendants comply with Local Rule 56.1 in their motion. (*See* Doc. 83 at 8–11.)

In return, the non-moving party must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." D.N.M. LR-Civ. 56.1(b). "**All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.**" *Id.* (emphasis added). "The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material

to the resolution of the motion." *Id.* Ms. Liming Wu (Plaintiff) fails to respond to Defendants' Jurisdictional Material Facts and Undisputed Material Facts. (*See* Docs. 83 at 8–11; 95.)

Plaintiff submits her own list of Undisputed Material Facts in her response brief, but the majority of her responses are comprised of conclusory and unsupported legal conclusions with either irrelevant or no citations to the record. (*See* Doc. 95 at 19–21.) In Fact No. 1, Plaintiff refers to the record to support her assertion that she revoked the Settlement Agreement. (*Id.* at 19 (citing 17cv0113, Doc. 42 (Pl.'s Mot. to Set Aside Stip. Order of Dismissal)).) This assertion, however, is a legal conclusion. Moreover, the Court has denied Plaintiff's Motions to Set Aside Settlement Agreement and Order of (sic) Granting Defendant's Motion to Enforce Settlement Agreement. (*See* Doc. 107.) Consequently, Plaintiff fails to support her assertion that she validly revoked the Settlement Agreement in 2015. In Fact Nos. 3 and 4, she refers to the record to support her assertion that Defendants gave her a "threatening job assignment" with "a premeditated scheme to fire" her. (*See* Doc. 95 at 19–20 (citing 17cv0113, Doc. 40 at 26); *see also* 18cv0813, Doc. 1 at 49–50 (the same document, but without the handwritten "threatening job assignment" notation).) Defendants contend that the referenced document is unauthenticated, contains typed and handwritten notes, and is irrelevant. (Doc. 100 at 4.) For purposes of these motions, the Court accepts that Plaintiff was given a job assignment when she returned to work for one day in 2015.

In Fact No. 4, Plaintiff also refers to photographs and medical records related to her traumatic brain injury. (*See* Doc. 95 at 20 (citing 17cv0113, Doc. 42 at 15–24).) Defendants contend that the documents are unauthenticated and irrelevant and may not be used to support the allegations that the job assignment caused Plaintiff to fall. (Doc. 100 at 4.) The Court acknowledges the medical records but agrees that their existence is inadequate, standing alone, to support her contention that the job assignment caused her to fall and hit her head. In Fact No. 5,

Plaintiff cites to a document to support that she received a text message from a supervisor with BLM while she was in the hospital. (Doc. 95 at 20 (citing 17cv0113, Doc. 58-2).) Neither Defendants nor the Court can find a document that matches the cited material.

Plaintiff fails to support Fact Nos. 2, 6, 7, and 8 with references to the record at all.[4] Thus, the Court does not accept these facts as undisputed. As a result of Plaintiff's failure to follow Local Rule 56.1, Defendants' facts will be deemed undisputed.

Plaintiff also fails to follow the Local Rules in filing her Supplemental Response to Defendants' Motion to Dismiss. (*See* Doc. 98.) As Defendants note (*see* Doc. 100 at 1 n.1), Plaintiff did not seek leave to file a surreply in violation of Local Rule 7.4(b), she did not tie the exhibits in the supplemental response to the undisputed facts or arguments she made in her original response in violation of Local Rule 56.1(b), and she attached 110 pages of unmarked exhibits in violation of Local Rules 10.5 and 10.6. *See* D.N.M. LR-Civ. 7.4(b), 56.1(b), 10.5, 10.6. Consequently, the Court will disregard Plaintiff's Supplemental Response. (Doc. 98.)

### B.      Factual Background

Plaintiff, who holds a master's degree in geology from Brigham Young University, was employed as a geologist with the Bureau of Land Management (BLM), an agency of the United States Department of the Interior (DOI). (Doc. 74 (4th Am. Compl.) ¶¶ 4, 9.) In 2014, she filed a complaint in this Court against the DOI for discrimination, retaliation, and negligence under federal and state law. (*See* Docs. 1; 4; 11-1.) In June 2015, Plaintiff, accompanied by her son and represented by her attorney, Ms. Katherine Ferlic, attended a mediation with the DOI. (*See* Doc. 45.) Ms. Karen Grohman, former Assistant United States Attorney (AUSA), represented the DOI.

---

[4] In Fact No. 8, Plaintiff asserts that she did not receive the promised neutral letter of recommendation, but she does not support this with an affidavit or a citation to the record. (*See* Doc. 95 at 21.)

(*See*, *e.g.*, 4th Am. Compl. ¶ 43.) Eventually, the parties settled on terms and signed a settlement agreement (the Agreement) on July 22, 2015. (Doc. 53-1.)

Plaintiff attempted to revoke the Agreement, but her revocation was received past the deadline the parties had agreed to in the Agreement. (*See id.* ¶ 8; *see also* Doc. 58 at 25.) Unaware that the revocation would arrive after the deadline, her attorney filed a motion to inform the Court that the parties were still negotiating settlement, and Plaintiff was ordered to return to work on August 3, 2015. (*See* Docs. 49; 58 at 3, 5.) Plaintiff alleges that she was suffering from Post-Traumatic Stress Disorder (PTSD) when she returned to work in August 2015, and she gave notice of her PTSD "to the BLM NM State Office management in June 2015." (*See*, *e.g.*, 17cv0113, Doc. 1 at 5; 18cv0813, Doc. 1 ¶ 17.) Under great stress due to a work assignment she received on August 3, Plaintiff lost consciousness at her home early on August 4, fell, and hit her head, suffering a traumatic brain injury. (*See* Docs. 58 at 5; 17cv0113, Doc. 42 at 15–24.) She thereafter went forward with the settlement, and the Court dismissed the parties' case with prejudice in August 2015. (*See* Docs. 54; 56; 57.)

Pursuant to the terms of the lawsuit, the DOI paid Plaintiff $200,000 and promised to send her a neutral letter of recommendation, and Plaintiff retired from federal service. (*See* Docs. 53-1 ¶¶ 7, 18; 61-1.) She also agreed to withdraw and dismiss all of her complaints and appeals then pending. (*See* Doc. 53-1 at 1.) Since the dismissal of her 2014 lawsuit, she has filed an additional EEOC complaint and two more lawsuits. (*See* 4th Am. Compl. ¶ 7; 83-C (EEOC complaint, No. DOI-BLM-15-0909); *see also* 17cv0113; 18cv0813.) The Court consolidated her three cases. (*See* Doc. 67.)

### C.     Procedural Background

Plaintiff's claims have a long and complicated background. In her original lawsuit,

14cv0150, Plaintiff filed motions to set aside both the parties' Agreement and the stipulated order of dismissal. (*See* Docs. 58, 65.) The Court denied these motions in February 2019; thus, the original lawsuit remains closed. (*See* Doc. 107.) Prior to its opinion denying Plaintiff's motions, the Court consolidated 14cv0150 with Plaintiff's two other lawsuits, because all three cases are based on common questions of law or fact. (*See* Doc. 67.) Shortly after consolidating the lawsuits, the Court granted Plaintiff's motion to file a Fourth Amended Complaint in her second lawsuit— 17cv0113. (*See* Doc. 71.) As the Court required all future filings to be filed in 14cv0150, Plaintiff filed her Fourth Amended Complaint for her second lawsuit in 14cv0150. (*See* Doc. 67 at 2 (requiring all future filings to be made in 14cv0150); *see also* Doc. 74 (4th Am. Compl.).)

In the Fourth Amended Complaint (again, relevant to Plaintiff's second lawsuit, 17cv0113), Plaintiff brings claims against Ms. Sheila Mallory (Deputy State Director, BLM), Ms. Grohman, and Mr. David Bernhardt (Acting Secretary of the DOI). (*See* 4th Am. Compl.) Plaintiff alleges that: (1) Count I: Ms. Mallory violated the Trade Secrets Act, 18 U.S.C. § 1905, and conspired to defraud the United States in violation of 18 U.S.C. § 371; (2) Count II: Defendants discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act; (3) Count III: Defendants discriminated against her on the basis of her PTSD in violation of the Rehabilitation Act; (4) Count IV: Ms. Mallory and Ms. Grohman discriminated against her, and Ms. Grohman obstructed justice in violation of 18 U.S.C. § 1505, concealed information from her, and coerced her into signing retirement paperwork; (5) Count V: Defendants were negligent in failing to properly train and/or supervise their employees; (6) Count VI: Defendants retaliated against her in violation of Title VII; and (7) Count VII: Defendants breached the parties' Agreement by failing to provide her with a neutral letter of recommendation. (*See id.*) Upon notice

by Defendants, the Court substituted the United States for Ms. Mallory and Ms. Grohman in Plaintiff's negligence claims under the Federal Tort Claims Act (FTCA). (*See* Docs. 87; 88.)

In her third lawsuit, 18cv0813, Plaintiff brings claims against Mr. Aden Seidlitz, Acting State Directory of BLM, only. (*See* 18cv0813, Doc. 1.) She alleges that: (1) Count I: Mr. Seidlitz failed to accommodate her disability (PTSD) and was negligent in giving her the job assignment and in plotting to fire her; and (2) Count II: Mr. Seidlitz negligently failed to supervise or train others, causing her injuries. (*See id.* ¶¶ 25–38.) Upon notice by Mr. Seidlitz, the Court substituted the United States for Mr. Seidlitz in the third lawsuit. (*See* Docs. 99; 105.)

## III. Analysis

### A. The Court lacks jurisdiction to consider Plaintiff's claims for violations of criminal statutes, for negligence, and for breach of the parties' Agreement.

#### 1. Plaintiff does not have standing to bring claims against individuals for violations of criminal statutes.

In Count I, Plaintiff alleges that Ms. Mallory divulged confidential government information to a private industry executive in violation of the Trade Secrets Act, 18 U.S.C. § 1905, and conspired to defraud the United States in violation of 18 U.S.C. § 371. (4th Am. Compl. ¶¶ 47–49.) She alleges in Count IV that Ms. Grohman lied to the Court and concealed Ms. Mallory's conduct described in Count I in an effort to obstruct justice in violation of 18 U.S.C. § 1505. (*Id.* ¶¶ 62–77.)

Motions to dismiss based on a lack of standing are brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Colo. Envtl. Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). "A Rule 12(b)(1) motion to dismiss 'must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Sladek v. Bank of Am.,*

*NA*, 2014 WL 8105182, at *2 (D. Colo. July 10, 2014) (quoting *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971)).

The Trade Secrets Act is a criminal statute, and it "does not furnish a private cause of action against governmental disclosure . . . ." *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979)). The Trade Secrets Act "can be relied upon in challenging agency action that violates its terms as 'contrary to law' within the meaning of the Administrative Procedure Act [(APA)], 5 U.S.C. § 706(2)(A) (1988)." *Id.* (citing Chrysler, 441 U.S. at 318–19). Plaintiff cites the APA in support of her contention that her claim under the Trade Secrets Act is proper. (*See* Doc. 95 at 10–11.) But as Defendants point out, "[t]he APA does not provide for individual-capacity claims[ ] or money damages . . . ." *Jefferson v. Harris*, 170 F. Supp. 3d 194, 217 (D.D.C. 2016) (quoting *Duhring Res. Co. v. U.S. Forest Serv.*, No. 07–314, 2009 WL 586429, at *6 (W.D. Pa. Mar. 6, 2009)); *see also* 5 U.S.C. § 706. (*See also* Doc. 100 at 7.) Because Plaintiff is bringing a claim against Ms. Mallory in her individual capacity, the APA does not afford a private cause of action under the Trade Secrets Act.

Nor may she bring a claim against Ms. Mallory under 18 U.S.C. § 371, as it is also a criminal statute that does "not provide for a private right of action and [is] thus not enforceable through a civil action." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (citations omitted). Plaintiff's claim for obstruction of justice against Ms. Grohman similarly fails, as 18 U.S.C. § 1505 is a criminal statute and does not provide a private right of action. *See Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 273 (10th Cir. 2002); *Fox v. Vitamin Cottage Nat. Grocers*, No. 05-cv-00962-REB-PAC, 2006 WL 2308492, at *10 (D. Colo. Aug. 9, 2006); *Price v. Kansas*, No. 15-9327, 2015 WL 13732182, at *2 (D. Kan. Nov. 12, 2015). Thus, Plaintiff does

not have standing to bring claims under the three criminal statutes, and the Court will dismiss the claims brought pursuant to 18 U.S.C. §§ 1905, 371, and 1505.

### 2. Plaintiff fails to demonstrate that she exhausted her claims under the FTCA.

Plaintiff brings a claim for negligence in Count V, presumably under the FTCA. (*See* 4th Am. Compl. ¶¶ 73–77.) She also brings various other claims against Ms. Grohman in Count IV— that she concealed information from Plaintiff during settlement negotiations and later coerced her into completing retirement paperwork. These claims are based on conduct Ms. Grohman took in her official capacity as an AUSA. (*See id.* ¶¶ 67–71.) It appears Plaintiff brings these claims in Counts IV and V under the FTCA. However, Plaintiff has not shown that she exhausted her administrative remedies under the FTCA. "Prior to filing suit in federal court, a plaintiff must present the tort claim to the responsible federal agency for settlement consideration." *Mark v. United States*, 224 F. Supp. 3d 1207, 1210 (D.N.M. 2016) (citing 28 U.S.C. § 2675(a)). This requirement "is jurisdictional and cannot be waived." *Id.* (citing *Lopez v. United States*, 823 F.3d 970, 977 (10th Cir. 2016)). As Plaintiff has not alleged that she presented her tort claims to the DOI or DOJ, the claims may not stand. For the foregoing reasons, the Court will dismiss Plaintiff's negligence claims in Counts IV and V.

### 3. The Court does not have jurisdiction to consider Plaintiff's claim for breach of the Agreement.

In Count VII, Plaintiff avers that Defendants breached the Agreement by failing to provide her with a neutral letter of recommendation. (4th Am. Compl. ¶¶ 94–95.) Defendants argue that the Court does not have subject matter jurisdiction over this claim. (*See* Doc. 83 at 18–19.) The Court agrees.

First, Plaintiff appears to argue that the alleged breach of the Agreement provides a basis

to reopen her 2014 lawsuit. (*See* Doc. 95 at 18–19.) The Court has already foreclosed this argument in its Memorandum Opinion and Order denying Plaintiff's Motions to Set Aside Settlement Agreement and Order of (sic) Granting Defendant's Motion to Enforce Settlement Agreement, and it will not consider it here again. (*See* Doc. 107.) Second, the Court does not have jurisdiction to consider her claim for breach of the Agreement under Title VII, because "Congress did not consent to being sued by federal employees to enforce settlement agreements reached as a result of Title VII discrimination claims . . . ." *Lindstrom v. United States*, 510 F.3d 1191, 1195 (10th Cir. 2007) (citation omitted).

As the Agreement is "equivalent to a contract[,] . . . two other federal statutes . . . are potentially implicated here." *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 (10th Cir. 2006). "The Tucker Act, 28 U.S.C. § 1491, provides that '[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." *Id.* at 1080–81 (quoting 28 U.S.C. § 1491(a)(1)). "The Little Tucker Act, 28 U.S.C. § 1346(a)(2), grants federal district courts concurrent jurisdiction over contract claims against the government where plaintiffs seek no more than $10,000 in damages." *Id.* at 1081. "The Supreme Court has long held that neither the Tucker Act nor the Little Tucker Act authorize relief other than money damages for such contract claims." *Id.* (citing *United States v. Jones*, 131 U.S. 1, 19 (1889); *Lee v. Thornton*, 420 U.S. 139, 140 (1975)).

Here, if Plaintiff seeks non-monetary relief related to the alleged breach (i.e., rescission of the Agreement), such relief is not available under the Tucker or Little Tucker Act. *See id.* If she seeks monetary damages for the breach, her claim fails under the summary judgment standard. Defendants submitted evidence to show that they mailed Plaintiff a neutral letter of

recommendation. (*See* Doc. 61-C.) While Plaintiff asserts that she never received such a letter, she fails to cite to the record or submit an affidavit attesting to this fact.[5] (*See* Doc. 95 at 21.) Thus, she fails to create a genuine dispute of fact, and her claim fails. Accordingly, the Court will grant Defendants' motion with respect to Count VII and dismiss Plaintiff's claim for breach of the Agreement.

**B.    Plaintiff has failed to state a claim in her remaining claims against Ms. Mallory and Ms. Grohman.**

Plaintiff asserts other individual-capacity claims against Ms. Mallory and Ms. Grohman. In Count IV she alleges that both discriminated against her—Ms. Mallory, by directing another BLM employee to reevaluate an appraisal that Plaintiff had previously conducted, and Ms. Grohman, by concealing Ms. Mallory's conduct. (*See* 4th Am. Compl. ¶¶ 62–66, 71.) She further alleges that Ms. Grohman concealed information from Plaintiff during settlement negotiations and later coerced her into completing retirement paperwork that was required under the Agreement. (*Id.* ¶¶ 67–71.)

Defendants move to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

---

[5] In accordance with relevant 12(b)(1) standards, the Court has referred "to evidence outside the pleadings" in considering this factual attack on its jurisdiction. *See Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1265 (D.N.M. 2011) (noting that "[i]n such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion") (quotation omitted).

*Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Plaintiff's allegations against Ms. Mallory arise out of actions she took as a BLM supervisor. Her allegations against Ms. Grohman arise out of actions she took as an AUSA. "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) (citations omitted). Plaintiff's allegations of discrimination are properly brought under Title VII, as Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Mobley v. Donahoe*, 498 F. App'x 793, 796 (10th Cir. 2012) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)). Title VII requires a plaintiff to name "'the head of the department, agency, or unit' as the defendant." *Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1478 (quoting 42 U.S.C. § 2000e-16(c)). Plaintiff has not demonstrated that either Ms. Mallory or Ms. Grohman are or were the head of their respective departments (the DOI or the Department of Justice (DOJ)). (*See* 4th Am. Compl.) For these reasons, Plaintiff may not maintain individual-capacity claims against Ms. Mallory and Ms. Grohman for discrimination.

### C. The Court will grant summary judgment to Defendants on all claims that were brought or could have been brought in Plaintiff's 2014 lawsuit.

Plaintiff makes claims for discrimination and retaliation in Counts II, III, and VI. (*See* 4th Am. Compl. ¶¶ 50–61, 72–93.) To the extent those claims are based on conduct that formed the

basis of the original 2014 lawsuit, she waived those claims in the parties' Agreement and may not bring them again now. Defendants move for summary judgment on these claims. Plaintiff argues that she was coerced into signing the Agreement, thus it was not knowing and voluntary. (*See* Doc. 95 at 11–15.)

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

"Title VII . . . employment discrimination claims may be waived by agreement, *see Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1352–53 (11th Cir. 1983), but the waiver of such claims must be knowing and voluntary, *see Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)." *Torrez v. Pub. Serv. Co. of N.M.*, 908 F.2d 687, 689 (10th Cir. 1990). The Tenth Circuit looks to the totality of the circumstances to determine whether a release is knowing and voluntary, examining:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known [her] rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 689–90 (quoting *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988) (internal citations omitted), *superseded by statute as stated in Geraghty v. Ins. Servs. Office, Inc.*, 369 F. App'x 402 (3d Cir. 2010)).

Here, the Agreement provides that "[i]n exchange for the valuable consideration provided to and acknowledged by Plaintiff[,] . . . Plaintiff voluntarily agrees . . . to fully and forever release and discharge the Agency . . . from any and all . . . claims . . . that Plaintiff has [or] could have raised" that arose "out of or relating to Plaintiff's employment with the Agency . . . ." (Doc. 53-1 ¶ 6.) This provision applies to claims "up to and including the date Plaintiff sign[ed] this Settlement Agreement[,]" including but not limited to claims arising under Title VII, the Age Discrimination in Employment Act, and the Rehabilitation Act of 1973. (*Id.*) The first paragraph of the Agreement states that the Agreement "fully and finally resolves all" complaints Plaintiff had filed with the EEOC and the United States Merit System Protection Board, as well as "any other formal or

informal claim filed, or which could be filed with any other judicial body or administrative agency." (*See id.* at 1.) The Court finds that this language is sufficiently clear and specific to inform Plaintiff that she was releasing the right to bring claims related to her employment with the DOI.

Plaintiff received her master's degree in geology in 1991 and had been employed with the BLM since at least 2010. (4th Am. Compl. ¶ 9; *see also* Doc. 11-1 ¶ 12.) The Court finds that Plaintiff's education and experience as a BLM employee are such that this factor weighs in favor of Defendants' position that her release of claims was knowing and voluntary.

Plaintiff attended a mediation on June 23, 2015, with United States Magistrate Judge William Lynch, where she was accompanied by her son and her attorney. (*See* Doc. 45.) The parties continued to discuss settlement terms after that date, and they signed the Agreement on July 22, 2015. (*See* Doc. 53-1.) The Agreement provided that any revocation must be delivered within one week to be valid. (*See id.* ¶ 8.) Plaintiff does not assert that she was under any kind of time constraint when she signed the Agreement on July 22, 2015. (*See* 4th Am. Compl.; *see also* Doc. 95.) It seems her most pressing concern is that Ms. Grohman did not disclose the fact that Ms. Mallory had received a promotion. (*See* Doc. 64 at 6 (asserting that she would not have signed the Agreement if she had known of the promotion); *see also* 4th Am. Compl. ¶ 67.) Nor does Plaintiff assert that she or her attorney were unable to negotiate the terms of the agreement. She simply states, without supporting evidence, that she was coerced into signing the agreement. (*See* Doc. 95 at 12.) This is insufficient to create an issue of fact. Thus, the third through sixth *Torrez* factors favor Defendants' position that the release of claims in the Agreement was knowing and voluntary. Finally, Plaintiff received $200,000 in exchange for her release of claims. (*See* Doc. 61-1.) This consideration also weighs in favor of Defendants' argument.

In *Torrez*, the Tenth Circuit found that where the plaintiff had "neither consulted with an attorney nor received encouragement from defendant to do so before he signed the release[,]" and where the release did not specifically mention that he was waiving employment discrimination claims, there was a fact issue that precluded summary judgment. *See* 908 F.2d at 690. In *Pittman v. American Airlines, Inc.*, the district court found that an employee's waiver was not knowing and voluntary because she was not represented by counsel, she was faced with a "take it or leave it" contract, and she signed the agreement on the same day (although she could have taken it home to consider it and seek legal counsel). *See* 14-cv-0728-CVE-FHM, 2016 WL 3129228, at *5–6 (N.D. Okla. June 2, 2016).

The facts here are distinguishable. The Court finds that the *Torrez* factors and the totality of the circumstances support a finding that Plaintiff's waiver was knowing and voluntary. Not only was she represented by legal counsel who had time to negotiate the terms of the Agreement, but the Agreement specified precisely what types of claims she agreed to waive in exchange for valuable consideration. Consequently, the Court will grant summary judgment to Defendants for all claims in Counts II, III, and VI that Plaintiff could have brought in the 2014 lawsuit—that is, all claims based on conduct through the date she signed the Agreement on July 22, 2015.

**D.    The Court will deny Defendants' motion with respect to Plaintiff's claims for discrimination and retaliation based on the one day she returned to work in 2015.**

Defendants ask the Court to find that Plaintiff fails to state claims for discrimination and retaliation in Counts II, III, and VI to the extent they are based on conduct that occurred when she returned to work for one day in August 2015. Plaintiff asserts that the following conduct constitutes discrimination and retaliation in violation of Title VII and the Rehabilitation Act of 1973: (1) Defendants ordered her to report to work on August 3, 2015 (*see* 4th Am. Compl. ¶¶ 42, 59);

(2) Defendants gave her a "threatening" job assignment (*id.* ¶ 59); and (3) Ms. Grohman "coerced Plaintiff into involuntary retirement" on August 31, 2015 (*id.* ¶¶ 44, 91).

### 1. Discrimination under the Rehabilitation Act

Defendants did not discuss Plaintiff's claims under the Rehabilitation Act.[6] To establish a prima facie case of discrimination under the Rehabilitation Act, Plaintiff must allege facts to show "(1) she is a handicapped person within the meaning of the Act; (2) she is otherwise qualified for the job; and (3) she was discriminated against because of the handicap." *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997). Plaintiff alleges that she is handicapped because she suffers from PTSD and emotional distress. (*See* 4th Am. Compl. ¶ 57.) In the complaint she filed in her third lawsuit, Plaintiff alleges that she reported her diagnosis "to the BLM NM State Office management in June 2015." (18cv0813, Doc. 1 ¶ 17.) While she does not go on to allege that "she was discriminated against because of [her] handicap[,]" *see* Woodman, 132 F.3d at 1338, the Court declines to dismiss this claim *sua sponte. See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (explaining that "[w]here a complaint fails to state a claim, and no amendment could cure the defect, a dismissal *sua sponte* may be appropriate") (citation omitted). Because Defendants did not address whether Plaintiff sufficiently stated a claim under the Rehabilitation Act, Count III will remain.

### 2. Discrimination and Retaliation under Title VII

It appears Plaintiff is proceeding on a disparate treatment theory. "To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, the employee must show the employer intentionally discriminated against him for a reason prohibited by the statute." *Gerald v. Locksley*,

---

[6] While Defendants mentioned Count III in a header, Defendants fail to specifically discuss whether Plaintiff has demonstrated a prima facie case under the Rehabilitation Act. (*See* Doc. 83 at 20, 24–26.)

785 F. Supp. 2d 1074, 1099 (D.N.M. 2011) (quoting *Martinez v. U.S. Dep't of Energy*, 170 F. App'x 517, 521 (10th Cir. 2006) (internal citation omitted)). "To establish a prima-facie case of discrimination, a plaintiff must demonstrate that: (i) she is a member of a protected class; (ii) she suffered an adverse[] employment action, and (iii) similarly situated employees were treated differently." *Id.* (citing *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005); *Velasquez v. Frontier Med. Inc.*, 375 F. Supp. 2d 1253, 1271 (D.N.M. 2005)). Similarly, "[t]o establish a prima-facie case of retaliation" under Title VII, Plaintiff "must show: '([i]) that . . . [she] engaged in protected opposition to discrimination, ([ii]) that a reasonable employee would have found the challenged action materially adverse, and ([iii]) that a causal connection existed between the protected activity and the materially adverse action.'" *Gerald*, 785 F. Supp. 2d at 1109–10 (quoting *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (internal quotation omitted)).

Defendants argue that the conduct Plaintiff describes does not constitute adverse employment actions. (*See* Doc. 83 at 24–25.) The Tenth Circuit has "stated that adverse employment actions 'constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Orr*, 417 F.3d at 1150 (quoting *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (internal quotation and citation omitted)).

With respect to Plaintiff's allegation that she was forced to retire on August 31, 2015, the Court notes that she had agreed to retire as part of the parties' Agreement. (*See* Doc. 53-1 ¶¶ 7, 18.) This conduct may not form the basis of any discrimination or retaliation claim.

The Court finds that Plaintiff may be able to proceed, however, on the remaining allegations. Plaintiff was ordered to report to work after her attorney filed a motion to inform the

Court that Plaintiff had revoked the Agreement and to request the Court extend certain deadlines. (*See* Doc. 49.) Defendants summarily state that this conduct was not adverse, as "Plaintiff created a question whether the parties ha[d] reached a settlement agreement . . . ." (Doc. 83 at 25.) The record shows that Plaintiff had only stopped working on July 2, 2015, after the parties had attended mediation and continued negotiating settlement on their own. (*See* 17cv0113, Doc. 55 at 7.) An argument could be made that ordering Plaintiff to return to work under these circumstances did not significantly change her employment status, as it simply returned the parties to their previous positions. (*See*, *e.g.*, Doc. 61 at 4 (asserting that the return to work "simply maintained the pre Settlement Agreement status quo").) However, Plaintiff asserts that her previous position was with the BLM Albuquerque Field Office as a GS-12 Geologist, not at the BLM New Mexico State Office under Ms. Mallory's supervision. (*See* 17cv0113, Doc. 55 at 7.) In *Payan v. United Parcel Serv.*, 905 F.3d 1162 (10th Cir. 2018), the Tenth Circuit noted that an employee had not demonstrated an adverse action where "he was transferred to a position with the same level of management authority, was not required to change locations, was no longer under the supervision of [a manager who was allegedly racist], and actually received a pay increase." 905 F.3d at 1174; *see also Chavez v. Adams Cty. Sch. Dist. No. 50*, 176 F. Supp. 3d 1161, 1177 (D. Colo. 2016) (finding that, in light of other "circumstances alleged in the Complaint, the involuntary transfer could plausibly constitute an adverse employment action"). Here, it appears that Plaintiff was transferred to a different work location, but it is unclear whether her job title or responsibilities were significantly changed.

Based on the record before the Court and viewing the allegations in a light most favorable to Plaintiff, it appears that she was required to at least change locations to an office where she would be working under a supervisor who was involved in the allegedly discriminatory conduct

for which she had filed EEOC complaints. Defendants do not present any arguments regarding the other factors relevant to analyzing a prima-facie claim for discrimination or retaliation, and the Court declines to consider them here. As such, the Court will also deny Defendants' motion with respect to her discrimination and retaliation claims under Title VII. Plaintiff will be allowed one final attempt to file an amended complaint that contains the facts and allegations necessary to maintain her claims under the Rehabilitation Act and Title VII. (*See infra* at Section III(F).)

### E. The Court will dismiss Plaintiff's third lawsuit.

In her third lawsuit, Plaintiff brings tort claims against Mr. Seidlitz under the FTCA. (*See* 18cv0813, Doc. 1 at 1.) Defendants argue that this third lawsuit should be dismissed as duplicative. (*See* Doc. 94 at 4.) The Court agrees. "District courts have discretion to control their dockets by dismissing duplicative cases." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Id.* "By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Id.* (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002) (internal quotation omitted)).

"There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the . . . essential basis[ ] of the relief sought must be the same." *Kirk v. Flores*, No. 1:15-CV-00736-JCH-LF, 2016 WL 10588065, at *4 (D.N.M. Feb. 25, 2016), *R.&R. adopted by* No. 1:15-CV-00736-JCH-LF, 2016 WL 10588066 (D.N.M. Mar. 24, 2016) (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894) (internal quotation omitted)). The Tenth Circuit has

stated that courts "analyze claim splitting as an aspect of res judicata," but "a final judgment is not a necessary component of the claim-splitting analysis . . . ." *Katz*, 655 F.3d at 1218 (citations omitted). Thus, Defendants must show that there is "identity of the parties or privies in the two suits" and "identity of the cause of action in both suits." *Kirk*, 2016 WL 10588066, at *3 (quoting *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (internal quotation omitted)).

Here, Plaintiff names Mr. Seidlitz in her suit under the FTCA. "In a suit brought under the FTCA, however, 'it is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant.'" *Rehoboth McKinley Christian Healthcare Servs., Inc. v. U.S. Dep't of Health & Human Servs.*, 853 F. Supp. 2d 1107, 1112 (D.N.M. 2012) (quoting *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988)). As the United States is the proper defendant in both 17cv0113 and 18cv0813, there is identity of the parties.[7] *See Kirk*, 2016 WL 10588066, at *3.

There is also identity of the causes of action in both suits. *See id.* In 18cv0813, Plaintiff alleges in Count I that Mr. Seidlitz failed to accommodate her disability (PTSD) and was negligent in giving her the "threatening" job assignment and in plotting to fire her. (*See id.* ¶¶ 25–31.) In Count II, she alleges that Mr. Seidlitz negligently caused her personal injuries by his conduct— again, presumably, in giving her the job assignment. (*See id.* ¶¶ 32–38.) These claims are almost identical to her claims in the Fourth Amended Complaint, in which she alleges that Defendants violated the Rehabilitation Act and discriminated against her in giving her the job assignment.

---

[7] Additionally, as the Court finds below, Plaintiff's claims for negligence are precluded by Title VII. Thus, the proper defendant would be "the head of the department, agency, or unit." *Johnson*, 861 F.2d at 1478 (quotation omitted). Here, that would be Mr. Bernhardt, who is also a named defendant in 17cv0113.

Plaintiff contends that her claim in 18cv0813 is different because it is brought under the FTCA, not under Title VII or the Rehabilitation Act. (*See* Doc. 96 at 3–5.)

"Title VII provides 'the exclusive judicial remedy for claims of discrimination in federal employment.'" *Nero v. Rice*, 986 F.2d 1428, 1993 WL 26638, at *2 (10th Cir. 1993) (quoting *Brown*, 425 U.S. at 835); *see also Mobley*, 498 F. App'x at 796. "Title VII does not, however, preclude separate remedies for unconstitutional actions such as torts of highly personal violations other than discrimination." *Nero*, 1993 WL 26638, at *2 (citing *Otto v. Heckler*, 781 F.2d 754, 756–57 (9th Cir.), *amended*, 802 F.2d 337 (1986)). Yet, "[P]laintiff framed [her] FTCA claim as alleging intentional infliction of emotional distress due to [Mr. Seidlitz's] discriminatory [and retaliatory] actions of" giving her a "threatening job order" when he knew that she suffered from PTSD. (*See* 18cv0813, Doc. 1 ¶¶ 17, 20–22.) "This claim is clearly grounded in [her] Title VII [and Rehabilitation Act] employment discrimination claims and could not have been brought separately" from those alleged in Plaintiff's second lawsuit. *See id.* For these reasons, the Court will dismiss Plaintiff's third lawsuit, 18cv0813, on the basis of improper claim-splitting.

### F.  Plaintiff may file her Fifth—and last—Amended Complaint.

Plaintiff has had multiple opportunities to file a complaint that contains all of her allegations and claims. As evidenced by this Opinion, she has repeatedly failed to compile the facts necessary to present a comprehensive picture of the conduct she complains of. The Court has now foreclosed all claims stemming from pre-July 22, 2015 conduct, and it has dismissed her third lawsuit. To simplify matters, the Court will also rescind its order of consolidation. (Doc. 67.) Because Plaintiff has only one remaining lawsuit, **all future filings shall be filed in 17cv0113**.

The Court is reluctant to allow Plaintiff another chance to clarify her claims and recognizes the inconvenience and expense this causes Defendants. However, because Defendants failed to

address the Rehabilitation Act claim in their motions, and because there is a possibility that Plaintiff will be able to cobble together the facts necessary to support her employment discrimination claims, the Court finds itself compelled to let this play out. Consequently, Plaintiff may file one final amended complaint in order to cure the deficiencies in the current iteration. Plaintiff's remaining claims include: Count II – discrimination on the basis of race under Title VII; Count III – discrimination on the basis of the Rehabilitation Act of 1973; and Count VI – retaliation under Title VII. (*See* 4th Am. Compl. ¶¶ 50–61, 78–93.) To be clear, all claims against Ms. Mallory, Ms. Grohman, and Mr. Seidlitz in their individual capacities are dismissed. Plaintiff may not bring any claims against these three individuals, and she may not add any new claims against any defendant. She may, however, choose to waive any of these three claims.

**Plaintiff shall include all relevant factual allegations necessary to support each element of each claim in her Fifth Amended Complaint.** In the future, the Court will not comb through the record to find facts that support Plaintiff's claims. **The Fifth Amended Complaint must stand alone**.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim and for Summary Judgment and Memorandum in Support (Doc. 83) is **GRANTED IN PART**—the Court will dismiss Counts I, IV, V, and VII from the Fourth Amended Complaint;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint for Damages under the Federal Tort Claims Act (Doc. 94) is **GRANTED**, and 18cv0813 is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Court hereby **RESCINDS** the order of consolidation; all future filings shall be made in 17cv0113, Plaintiff's only remaining lawsuit;

**IT IS FURTHER ORDERED** that Plaintiff shall file a comprehensive Fifth Amended Complaint as described herein no later than **Friday, May 3, 2019**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE